

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00515-CV

IN THE INTEREST OF G.P., A
CHILD

----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant K.P. appeals from the trial court's order terminating her parental rights to her son G.P. In three issues, she contends that the evidence is legally and factually insufficient to support the trial court's endangerment findings and factually insufficient to support the trial court's best interest finding.[2] Because we

---

[1]See Tex. R. App. P. 47.4.

[2]See Tex. Fam. Code Ann. § 161.001(1)(D)–(E), (2) (West Supp. 2011).

hold that the evidence is legally and factually sufficient to support those findings, we affirm the trial court's judgment.

In her first two issues, Appellant contends that the evidence is legally and factually insufficient to support the trial court's endangerment findings under subsections (D) and (E).[3]

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one ground listed under subsection (1) of the statute and must also prove that termination is in the best interest of the child.[4]  Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact.[5]

Termination decisions must be supported by clear and convincing evidence.[6]  Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to

---

[3]*See id.* § 161.001(1)(D)–(E).

[4]*Id.* § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).

[5]*Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re D.T.*, 34 S.W.3d 625, 629 (Tex. App.—Fort Worth 2000, pet. denied) (op. on reh'g).

[6]Tex. Fam. Code Ann. § 161.001; *see also id.* § 161.206(a) (West 2008).

be established."[7]   Due process demands this heightened standard because termination results in permanent, irrevocable changes for the parent and child.[8]

In evaluating the evidence for legal sufficiency in parental termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven.[9]  We review all the evidence in the light most favorable to the finding and judgment.[10]  We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so.[11]  We disregard all evidence that a reasonable factfinder could have disbelieved.[12]  We consider undisputed evidence even if it is contrary to the finding.[13]   That is, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not.[14]

---

[7]*Id.* § 101.007 (West 2008).

[8]*In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and modification).

[9]*In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

[10]*Id.*

[11]*Id.*

[12]*Id.*

[13]*Id.*

[14]*Id.*

In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the judgment with our own.[15] We determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated subsections (D) or (E) of section 161.001(1) and that the termination of the parent-child relationship would be in the best interest of the child.[16] If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the challenged finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient.[17]

As we have explained in a similar case,

> Endangerment means to expose to loss or injury, to jeopardize. The trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endanger the physical or emotional well-being of the child. Under subsection (D), it is necessary to examine evidence related to the environment of the child to determine if the environment was the source of endangerment to the child's physical or emotional well-being. Conduct of a parent in the home can create an environment that endangers the physical and emotional well-being of a child.

---

[15]*In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

[16]Tex. Fam. Code Ann. § 161.001; *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

[17]*H.R.M.*, 209 S.W.3d at 108.

. . . . Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical or emotional well-being was the direct result of the parent's conduct, including acts, omissions, and failures to act. Termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required.

To support a finding of endangerment, the parent's conduct does not necessarily have to be directed at the child, and the child is not required to suffer injury. The specific danger to the child's well-being may be inferred from parental misconduct alone, and to determine whether termination is necessary, courts may look to parental conduct both before and after the child's birth . . . . As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being.[18]

Additionally, a parent's mental state may be considered in determining whether a child is endangered if that mental state allows the parent to engage in conduct jeopardizing the child's physical or emotional well-being.[19] Finally, even if a parent makes dramatic improvements before trial, "evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of . . . irresponsible choices."[20]

The evidence shows that G.P. was born in January 2011 with methamphetamine and amphetamine in his system. He was removed from Appellant by the Texas Department of Family and Protective Services (TDFPS)

---

[18]*In re J.W.*, No. 02-08-00211-CV, 2009 WL 806865, at *4 (Tex. App.—Fort Worth Mar. 26, 2009, no pet.) (mem. op.) (citations omitted).

[19]*In re M.E.-M.N.*, 342 S.W.3d 254, 262 (Tex. App.—Fort Worth 2011, pet. denied).

[20]*In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

5

before leaving the hospital. The evidence further shows that Appellant had used methamphetamine since May 2010 and had last used methamphetamine three days before G.P. was born. Appellant told the Child Protective Services (CPS) investigator that she had known that she was pregnant when she used drugs but that she had planned to abort the pregnancy or give the child up for adoption. The child's birth father, J.L.H., who does not challenge the termination of his parental rights, told the CPS conservatorship worker that one of the reasons he ended his relationship with Appellant was that she would not stop using drugs during the pregnancy.

Appellant also told the CPS investigator that her five older children were being raised by family members at least in part because of her drug use.

Appellant continued to use methamphetamine regularly after G.P.'s removal. She told the CPS conservatorship worker in April 2011 that she was "a drug user" and "proud of it." No evidence shows any attempt by Appellant to stop abusing illegal drugs or to get treatment for her addiction, though she did admit that she had a drug problem and, on the day before the December 6, 2011 trial, told the CPS conservatorship worker that she would like to get clean and sober.

At the time of trial, Appellant was in a federal detention center after pleading guilty in a federal criminal case involving conspiracy to distribute marijuana. Additionally, there was evidence that even before her incarceration, Appellant did not have stable housing.

6

Reviewing the evidence in the light most favorable to the verdict, we hold that the evidence is legally sufficient to support the trial court's endangerment findings. Further, reviewing all the evidence and giving due deference to the trial court's findings, we hold that the evidence is factually sufficient to support the trial court's endangerment findings. We overrule Appellant's first and second issues.

In her third issue, Appellant contends that the evidence is factually insufficient to support the trial court's finding that termination of her parental rights is in G.P.'s best interest. There is a strong presumption that keeping a child with a parent is in the child's best interest.[21] Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest.[22] The following factors should be considered in evaluating the parent's willingness and ability to provide the child with a safe environment:

(1) the child's age and physical and mental vulnerabilities;

(2) the frequency and nature of out-of-home placements;

(3) the magnitude, frequency, and circumstances of the harm to the child;

(4) whether the child has been the victim of repeated harm after the initial report and intervention by the department or other agency;

(5) whether the child is fearful of living in or returning to the child's home;

---

[21]*In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).

[22]Tex. Fam. Code Ann. § 263.307(a) (West 2008).

(6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

(7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9) whether the perpetrator of the harm to the child is identified;

(10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

> (A) minimally adequate health and nutritional care;
>
> (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;
>
> (C) guidance and supervision consistent with the child's safety;
>
> (D) a safe physical home environment;
>
> (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and
>
> (F) an understanding of the child's needs and capabilities; and

(13) whether an adequate social support system consisting of an extended family and friends is available to the child.[23]

---

[23] *Id.* § 263.307(b); *R.R.*, 209 S.W.3d at 116.

Other, nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

(A)    the desires of the child;

(B)    the emotional and physical needs of the child now and in the future;

(C)    the emotional and physical danger to the child now and in the future;

(D)    the parental abilities of the individuals seeking custody;

(E)    the programs available to assist these individuals to promote the best interest of the child;

(F)    the plans for the child by these individuals or by the agency seeking custody;

(G)    the stability of the home or proposed placement;

(H)    the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I)    any excuse for the acts or omissions of the parent.[24]

These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate.[25]    Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best

---

[24]*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (citations omitted).

[25]*C.H.*, 89 S.W.3d at 27.

interest of the child.[26]   On the other hand, the presence of scant evidence relevant to each factor will not support such a finding.[27]

In addition to the evidence and findings discussed above, the record contains the following evidence.  Appellant did not complete any services on her service plan.  That is, she did not complete parenting classes, she did not stay drug-free or "clean and sober," she did not participate in drug treatment, she did not maintain regular contact with her caseworker, and she did not visit consistently with G.P. even before her August 2011 incarceration.  The CPS conservatorship worker testified that termination of Appellant's parental rights was in G.P.'s best interest because Appellant had not demonstrated that she could provide a safe home for him or satisfy his basic and emotional needs and keep him safe.

At the time of trial, G.P. was developmentally on target, healthy, and happy.  His foster parents had a lot of experience with children and had undergone extensive training in child development and child nutrition.  The CPS conservatorship worker testified that G.P.'s foster parents' home is free of safety hazards, the parents both have careers, they do not use drugs, and they have a large family who wishes the best for G.P.  TDFPS's permanency plan for G.P. and his foster parents' intention, pending termination, is adoption.

---

[26]*Id.*

[27]*Id.*

10

Applying the appropriate standard of review, we hold that the evidence is factually sufficient to support the best interest finding. We overrule Appellant's third issue.

Having overruled Appellant's three issues, we affirm the trial court's judgment.

PER CURIAM

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED: July 5, 2012